UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSEPH CANZONERI, as Guardian of the
ESTATE of KATHLEEN POWELL,

                          Plaintiff,

               v.

INCORPORATED VILLAGE OF ROCKVILLE
CENTRE, DANIEL CASELLA, individually, and as
Superintendent of the Village of Rockville Centre,
Department of Buildings, JOHN BUSHING,
individually, and as Chief of the Village of Rockville
Centre, Fire Department, A. THOMAS LEVINE,
individually, and as Village Attorney for the Village
of Rockville Centre, SGT. BRIAN BURKE,
individually, and as a Police Officer of the Village of
Rockville Centre and FRANCIS QUIGLEY,
individually, and as Village Administrator of the
Village of Rockville Centre,

                          Defendants.
------------------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
12-CV-827 (ADS) (AKT)

**FILED
CLERK**

12/5/2013 4:07 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

APPEARANCES:

**Ginsburg & Misk**
*Attorneys for the Plaintiff*
215-48 Jamaica Avenue
Queens Village, New York 11428
   By: Gerard N. Misk, Esq., of Counsel

**Goldberg Segalla, LLP**
*Attorneys for the Defendants*
100 Garden City Plaza, Suite 225
Garden City, New York 11530
   By: Edward K. Kitt, Esq., of Counsel

**SPATT, District Judge.**

On February 14, 2012, the Plaintiff Joseph Canzoneri (the "Plaintiff" or

"Canzoneri"), temporary guardian of the person and property of Kathleen Powell,

commenced this action under 42 U.S.C. § 1983 and § 1988 against the Defendants

1

Incorporated Village of Rockville Centre (the "Village"), Daniel Casella ("Casella"), individually, and as Superintendent of the Village of Rockville Centre, John Bushing ("Bushing"), individually, and as Chief of the Village of Rockville Centre, Fire Department, A. Thomas Levine ("Levine"), individually, and as Village Attorney for the Village of Rockville Centre, Sgt. Brian Burke ("Burke"), individually, and as a Police Officer of the Village of Rockville Centre, and Francis Quigley ("Quigley, and collectively the "Defendants"), individually, and as Village Administrator of the Village of Rockville Centre, to recover damages for the alleged deprivation and destruction of the property of Powell without due process or just compensation.

In particular, the Plaintiff alleges that the Defendants violated Powell's rights under the Fourteenth Amendment to the United States Constitution and under the Constitution of the State of New York. The Plaintiff asserts that the Defendants improperly confined and restrained Powell without just cause in violation of her civil rights and under color of authority in violation of 42 U.S.C. § 1983, and that, as a result, she suffered great distress, including injury and damages to her person and property. The Plaintiff further contends that the Defendants illegally and improperly confiscated a vehicle owned by Powell without just cause or due process. Finally, the Plaintiff maintains that the Defendants improperly demolished a residence owned by Powell, without just cause and without proper notice.

Presently before the Court is a motion by the Defendants pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P") 12(b)(1) and 12(b)(6) to dismiss the amended complaint. For the following reasons, the Defendants' motion to dismiss is granted in part and denied in part.

## I. BACKGROUND

A. <u>Factual Background</u>

The following facts are drawn from the amended complaint and considered in a light most favorable to the Plaintiff.

Pursuant to an Executor's Deed dated August 21, 2009, Powell became the sole owner in fee simple of the premises located at 83 Clinton Avenue, Rockville Centre, New York. After becoming owner of the property, Powell had been hospitalized from on or about January 10, 2011 up to and including June 10, 2011. Due to Powell's illness, the condition of the home in which she resided deteriorated.

On January 12, 2011, Daniel Casella, the Building Department Superintendent of Rockville Centre, visited the premises and determined that the residence was unsafe and called a "board up crew" to board the doors and windows.

On January 13, 2011, Casella issued a Notice of Violation to Powell indicating unsanitary conditions on the premises, and giving Powell ten days to remediate the problem. The Notice was sent returned receipt requested on January 13, 2011, and was returned as undeliverable. On February 24, 2011, Casella prepared a letter to Powell, including an invoice for $948 with reference to boarding of the premises. This letter was also returned as undeliverable.

By way of follow-up, on March 1, 2011, Quigley wrote a letter to Julia Powell, presumably a relative of Kathleen Powell, although the relation is unclear, that referenced the prior letters and a need to remediate the premises. The March 1, 2011 letter stated that the failure of Powell to act would require further action by a court and/or further action by the Village Board of Trustees. However, despite the contents of the letter, there

was no action by any Court or the Village Trustees. The letter dated March 1, 2011 was returned as undeliverable.

On or before May 16, 2011, Casella emailed an attorney completing Medicaid applications for Powell. Casella inquired about the exterior cleanup of her property, as there was debris and the grass was overgrown.

At some point, Nancy B. Simmons, as Executive Vice President of Mercy Medical Center, commenced a proceeding pursuant to Article 81 of the New York Mental Hygiene Law for the appointment of a guardian of Powell. Following a hearing, on June 6, 2011, Justice Joel Asarch of the New York State Supreme Court signed a consent order appointing the Plaintiff, Joseph Canzoneri, as temporary guardian of the estate of Powell.

On June 14, 2011, Casella learned about a meeting with an advocate of Powell scheduled for May 19, 2011, but no one appeared on behalf of Powell for the meeting.

On June 15, 2011, Casella arranged for contractors to disconnect the sewer connection to 83 Clinton Avenue, allegedly without notice to the Plaintiff or Powell.

Also, the Plaintiff alleges that, despite the fact that the Village was aware of Powell's condition from January 11, 2011 through June 17, 2011, they took no steps to properly notify her or anyone acting on her behalf of any actions they were taking regarding her premises. Furthermore, the Plaintiff alleges that, despite the fact that prior to June 17, 2011, the Village, through Levine, had become aware of the appointment of the Plaintiff as temporary guardian for Powell, the Defendants took no steps to notify him of any actions they were taking with regard to her real property.

On June 17, 2011, Levine advised the Plaintiff that upon inspection of the premises, the Village determined that the premises constituted an immediate hazard and

he issued a directive to demolish the structure pursuant to Village Code Chapter 122. The Plaintiff asserts that Village Code Chapter 122 does not authorize the directive referenced by Levine's email, but requires further action by the Board of Trustees, including possibly an action in a court of appropriate jurisdiction.

Also, on June 17, 2011, at approximately 10:40 a.m., after Powell was found in her home allegedly in violation of a "No-Occupancy" Order, Burke ordered her removal. It is unclear how Powell left the premises as the amended complaint states that Village Police took her in handcuffs, yet Plaintiff's Memorandum of Law states that she was taken via Nassau County Ambulance.

Regardless, the Plaintiff asserts that, at approximately 2:15 p.m. on this day, June 17, 2011, the demolition of Powell's home began and the structure was in fact demolished. Also, on June 17, 2011, the Village, allegedly improperly and without notice, impounded Powell's 1997 Plymouth Voyager Minivan, even though the vehicle was apparently legally parked on Powell's premises. In impounding Powell's vehicle, the Plaintiff alleges that the Village caused damage to the vehicle, ultimately resulting in its total loss.

Subsequent to the actual demolition, on June 18, 2011, an application for a building permit for demolition was made. On June 23, 2011, an application for a demolition permit was made and approved. At no point did Powell seek compensation through New York State remedies for the demolition of her home and the taking of her vehicle prior to commencing the present action.

On July 14, 2011, the Plaintiff filed a notice of claim pursuant to § 50 of the New York General Municipal Law with the Village. On August 8, 2011, the Plaintiff served

on the Village an amended notice of claim, describing the subject claim as "[d]amages for destruction of real and personal property." (Def's Mem, Exh 7.)

On August 26, 2011, Judge Knobel issued an order authorizing the Plaintiff to ". . . appear on behalf of [Powell] in any litigation, including litigation against the Incorporated Village of Rockville Centre as a result of the action taken by said Village against the property of Ms. Powell . . . [with] any settlement or payment of legal fees . . . subject to the approval of a court of competent jurisdiction[]."

B.  Procedural History

On February 14, 2012, the Plaintiff filed a complaint in this matter asserting three causes of action.  The first cause of action alleged a procedural due process violation to Powell's person and property under the Fourteenth Amendment.  The second cause of action was for damage and distress in the form of the total loss of Powell's vehicle.  The third cause of action was for injury and damages consisting of the entire loss of the value of Powell's real property.  The Court refers to the second and third causes of action as the "takings claims."

The Plaintiff filed an amended complaint on October 4, 2012, adding a fourth cause of action under the Fourth Amendment.  The Plaintiff seeks compensatory and punitive damages.

On May 24, 2013, the Defendants filed a motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the amended complaint.  Among other things, the Defendants contend that (1) the Plaintiff lacks standing; (2) the case is not ripe for review; (3) the Plaintiff failed to first pursue state law remedies prior to starting the present action; and (4) the Plaintiff fails to state a claim upon which relief can be granted.

By letter dated July 16, 2013, the Plaintiff advised Judge Knobel that the Defendants in this case had challenged the Plaintiff's standing to commence this action on behalf of Powell.  In response, on July 25, 2013, Judge Knobel issued an order authorizing the Plaintiff "to defend or maintain any civil judicial proceeding for the benefit of [Powell] to a conclusion or until an executor of administrator is appointed . . . [t]he power granted hereinabove shall be deemed retroactive to the date of the Bench decision of the Court (Asarch, J.) issued on August 26, 2011 which authorized the exercise of the same."  On July 31, 2013, the Plaintiff filed a copy of this state court order.  The Defendants challenge the submission of this order as beyond the scope of this Court's review on the motion to dismiss.

## II. DISCUSSION

A.  Legal Standards

1. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. at 113.

2. Rule 12(b)(6)

Under the now well-established Twombly standard, a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. (quoting Iqbal, 56 U.S. at 663). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 56 U.S. at 664). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 56 U.S. at 664.

 Finally, "in adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (quoting Allen v. West Point–Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)).

B.  Standing

At the outset, the Defendants contend that the Plaintiff lacks standing because there is no genuine controversy between Powell and the Defendants. The Defendants further contend that Canzoneri has limited powers, granted to him in Judge Knobel

August 26, 2011 order, which do not include the commencement of litigation. The Plaintiff counters that the Defendants waived the right to assert lack of standing at this stage in the litigation, after failing to raise lack of standing as an affirmative defense in their original answer. The Plaintiff also points to Judge Knobel's July 25, 2013 order specifically authorizing the Plaintiff to commence litigation on behalf of Powell and making that authority retroactive to August 26, 2011. As noted above, the July 25, 2013 order was filed after the present motion to dismiss was fully briefed. Neither of those state orders was incorporated by reference in the amended complaint.

However, the Court need not consider, nor decide whether to consider, the state court orders because to the extent the Defendants assert that the Plaintiff lacks statutory standing, that argument is deemed waived. Wells Fargo Bank v. Mastropaolo, 42 A.D. 3d 239, 873 N.Y.S. 2d 247 (2d Dep't 2007)(holding that the defense of lack of standing falls within C.P.L.R. 3211(e) and must be raised in an answer or pre-answer motion); Credle-Brown v. Connecticut, 246 F.R.D. 408, 409-10 (D. Conn. 2007)(holding that "a response to an amended complaint is not sufficient to override a party's earlier waiver." )

However, the Court finds that the Plaintiff has adequately plead constitutional standing, the presence of which cannot be waived. In re Chrysler, 576 F.3d 108, 121 (2d Cir. 2009) ("federal courts are constrained by our own constitutional limitations, including the non-waivable Article III requirement that we have jurisdiction over the case or controversy before us.").

In order to establish standing for purposes of the constitutional "case or controversy" requirement, a plaintiff must show that he or she personally has suffered an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the

challenged action; and redressable by a favorable ruling." <u>Clapper v. Amnesty Int'l</u>, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013).  Here, the Plaintiff alleges that Powell suffered the loss of her home and vehicle and, as a result, suffered great distress.  In the Court's view, the Plaintiff alleges a concrete, actual injury fairly traceable to the actions of the Defendants.

C.  <u>Ripeness</u>

Article III, Section 2 of the U.S. Constitution restricts federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2; <u>see</u> <u>Vt. Right to Life Comm., Inc. v. Sorrell</u>, 221 F.3d 376, 381 (2d Cir. 2000).  The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." <u>Nat'l Park Hospitality Ass'n v. Dep't of Interior</u>, 538 U.S. 803, 808 (2003) (internal quotation marks omitted).  Its purpose is to "ensure that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III" and "prevent[ ] a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 90 (2d Cir. 2002).  In determining whether a claim that challenges a law is ripe for review, the Court must consider whether the issue is fit for adjudication as well as the hardship to the plaintiff that would result from withholding review. <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 149, 87 S. Ct. 150718 L. Ed. 2d 681 (1967), <u>overruled on other grounds by</u> <u>Califano v. Sanders</u>, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977); <u>Marchi v. Bd. of Coop. Educ. Servs.</u>, 173 F.3d 469, 478 (2d Cir. 1999).

Here, the Court finds that the Plaintiff's takings claim is not ripe because the Plaintiff has not availed herself of New York's procedure for obtaining compensation. Livant v. Clifton, 334 F. Supp. 2d 321, 326 (E.D.N.Y. 2004).  In Livant, the court concluded that the plaintiff's failure to seek New York State remedies prior to claiming a violation of the Just Compensation Clause was prohibited.  Livant relied on Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), a case in which the Supreme Court of the United States held that a property owner "cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied." Id. at 194.  In other words, a landowner must first seek compensation from the state, provided it has a "reasonable, certain, and adequate provision for obtaining compensation" at the time of the taking. Id. (quoting Blanchette v. Connecticut Gen. Ins. Corporations, 419 U.S. 102, 125, 95 S. Ct. 335, 349, 42 L. Ed. 2d 320 (1974)).

In New York, there are "two such reasonable certain and adequate provision[s]. One is to seek compensation through the procedures detailed in the New York State Eminent Domain Procedure Law.  The other is to bring a state law action under Article I, Section 7 of the New York State Constitution." Livant, 334 F. Supp. 2d at 326 (quoting Vaizburd v. United States of America, 90 F. Supp. 2d 210, 216-17 (E.D.N.Y. 2000)). Here, Powell did not seek either of these remedies prior to commencing the instant action.  Thus, the Court dismisses without prejudice the takings claims on the ground of ripeness. Country View Estates @ Ridge LLC v. Town of Brookhaven, 452 F. Supp. 2d 142, 144 (E.D.N.Y. 2006)("If the case is not ripe, there is no subject matter jurisdiction

. . . . [and][d]ismissal without prejudice is [ ] the proper disposition in the ripeness context.")

D.  Qualified Immunity

Qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Ying Jing Gan v. City of New York, 996 F.2d 522, 531 (2d Cir. 1993) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

Further, a defendant asserting a qualified immunity defense on a motion to dismiss "faces a formidable hurdle . . . and is usually not successful." Field Day, LLC v. County of Suffolk, 463 F.3d 167, 191–92 (2d Cir. 2006).  The defense will succeed only where entitlement to qualified immunity can be established "based [solely] on facts appearing on the face of the complaint." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).  For this reason, a motion to dismiss "is a mismatch for immunity and almost always a bad ground of dismissal." Id. (quoting Jacobs v. City of Chicago, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring in part)).

In this case, the Defendants contend that Casella, Bushing, Levine, Burke, and Quigley made tactical and discretionary decisions within the scope of their employment and are, therefore, entitled to the defense of qualified immunity.  Although the Plaintiff make no counterargument regarding qualified immunity, the Court is not prepared to rule at this time that, based on the face of the complaint, these officials are, as a matter of law, entitled to qualified immunity for their actions.  This part of the motion is denied.

E.  <u>Section 1983</u>

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. <u>See</u> 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 145 n. 3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)).  For this reason, as a threshold matter, in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. <u>See</u> <u>Baker</u>, 443 U.S. at 140.

Here, the Plaintiff asserts claims under the Fourth and Fourteenth Amendments. As a preliminary matter, the Court discerns no independent theory underlying the Plaintiff's Fourth Amendment claim – whether sounding in false arrest, abuse of process, or malicious prosecution – separate and apart from his procedural due process claim under the Fourteenth Amendment.  Therefore, the Court dismisses the Plaintiff's Fourth Amendment claim as against all the Defendants.

A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an opportunity to be heard. <u>See</u> <u>B.D. v. DeBuono</u>, 130 F. Supp. 2d 401, 432-33 (S.D.N.Y. 2000).  To prevail on a procedural due process claim, a plaintiff must show that he or she possessed a protected liberty or property interest and was deprived of that interest without due process of law. <u>Kassim v. City of Schenectady</u>, 255 F. Supp. 2d 32, 37 (N.D.N.Y.

2003) (citing <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 285-86 (2d Cir. 2001) (internal citations omitted)).  Here, the Defendants do not contest that, as owner of the house, the Plaintiff possessed a protected property interest.  Rather, the Defendants argue that because of the emergency circumstances, they had no obligation to provide ordinary due process.

The Supreme Court has recognized that "the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." <u>Parratt v. Taylor</u>, 451 U.S. 527, 539, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981).  Thus, <u>Paratt</u> provides an emergency-based exception to the requirement that notice and predeprivation process be provided. <u>See</u> <u>Catanzaro v. Weiden</u>, 188 F.3d 56, 61 (2d Cir. 1999).  In such a circumstance, due process rights are violated "only when an emergency procedure is invoked in an abusive and arbitrary manner." <u>Id.</u> at 62.

The inquiry is thus twofold: whether there was an emergency that required immediate action, and whether adequate post-deprivation remedies were available. <u>Id.</u> at 61-62.  In determining the need for immediate action, the Second Circuit, relying on the Supreme Court's decision in <u>Hodel</u>, directs that courts avoid hindsight analysis of whether an emergency actually existed, but rather, afford the decision to invoke the emergency procedures "some deference." <u>Id.</u> at 62 (relying on <u>Hodel v. Virginia Surface Mining & Reclamation Ass'n</u>, 452 U.S. 264, 302-03, 101 S. Ct. 2352, 69 L. Ed. 2d 1 (1981)).  Stated another way, "when there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist . . . the discretionary invocation

of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." Catanzaro, 188 F.3d at 63.

In this regard, a complaint should be dismissed for failure to state a claim when, on its face, it fails to suggest that the defendants' decision to take emergency action was arbitrary or an abuse of discretion. Heckmann v. Town of Hempstead, 10-CV-5455 (SJF)(GRB), 2013 WL 1345250, at *2 (E.D.N.Y. Mar. 27, 2013) ("There are no factual allegations in the Second Amended Complaint from which it may plausibly be inferred that defendants' decision to take emergency action in the face of a reported gas odor emanating from plaintiff's property was arbitrary or an abuse of discretion."); Idlewild 94-100 Clark, LLC v. City of New York, 27 Misc.3d 1006, 1019, 898 N.Y.S.2d 808 (Sup. Ct. 2010)("In the absence of any allegation by plaintiffs that they were deprived of due process because post-deprivation remedies were either unavailable or insufficient, plaintiffs' due process claim must be dismissed for failure to state a claim.")

Indeed, in Rohde v. City of New York, No. 99 Civ. 8714 (TPG), 2000 WL 1372835 (S.D.N.Y. Sept. 25, 2000), the City of New York invoked an emergency procedure to demolish three buildings after a partial facade collapse, and the owner sued, asserting a due process claim. The City and other defendants answered and moved for judgment on the pleadings prior to discovery. Id. at * 1. The district court granted the motion, holding that the plaintiff's conclusory allegation that there was no imminent danger to the public was insufficient because the partial collapse was undisputed. Id. at *4–*5. The district court noted that the plaintiff admitted in the complaint that a joist and wall sections had collapsed at one building, and the plaintiff did not rebut the assertion that eighty percent of one building's front wall and twenty-five percent of another

building's front wall had collapsed to the sidewalk. Id. at *4. Accordingly, the district court determined that the plaintiff had failed to state a claim upon which relief could be granted and dismissed the case. Id. at *5.

Here, by contrast, the Court finds that the Plaintiff's allegations, taken together, adequately plead that the Defendants' emergency actions were arbitrary and capricious. In the amended complaint, while the Plaintiff concedes that while the property had deteriorated at all times relevant herein, he insists that no imminent danger presented itself and that, in fact, the premises as they existed on June 17, 2011 could have been renovated. The Plaintiff further contends that the (1) 10-day remediation period given on January 13, 2011 and (2) passage of time from January 13, 2011 to June 17, 2011 before the demolition belies any claim of immediacy. Similarly, the fact that the Village did not mention the possibility in the letters sent to Powell prior to June 17, 2011 betrays a lack of urgency.

In this regard, the Defendants' reliance on Catanzaro and WWBITV, Inc. v. Village of Rouses Point, 589 F.3d 46 (2d Cir. 2009) is misplaced. Those two cases "involved a summary judgment motion, not a motion to dismiss. Moreover, in both of those cases, it was undisputed after discovery that the demolished properties were seriously damaged." DePietro v. City of New York, 09-CV-932, 2010 WL 449096, at *7 (E.D.N.Y. 2010).

Here, although the docket indicates that all fact discovery was to be completed by March 8, 2013, the instant motion was briefed as a motion to dismiss, at least by the Plaintiff. Further, the Court recognizes the Plaintiff's representations about the difficulties of conducting discovery in this case in light of Powell's incapacity. To the

extent the Plaintiff seeks additional discovery notwithstanding the expiration of the discovery deadline, the Court directs the Plaintiff to make that request to United States Magistrate Judge A. Kathleen Tomlinson.

Having found that the Plaintiff has set forth sufficient allegations at the motion to dismiss stage to withstand the defense of emergency, the Court turns to the Plaintiff's specific allegations against the respective Defendants.

F. The Monell Claims

As to the Village of Rockville Centre, a municipality may be liable under Section 1983 for any "policy or custom" that causes a "deprivation of rights protected by the Constitution." Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690–91, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (Brennan, J.). It is well settled that municipal liability may be established based on the single acts of a municipal official with "final policymaking authority." City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988); Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000). "A court can identify individuals who have policymaking authority by their receipt of such authority through express legislative grant, or through their delegation of policymaking authority from those to whom the power has been expressly granted." Lathrop v. Onondaga Cnty., 220 F. Supp. 2d 129, 136 (N.D.N.Y. 2002) (citation and internal quotation marks omitted). Further, "the official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be responsible under state law for making policy in that area of the municipality's business." Jeffes, 208 F.3d at 57 (citations, emphasis, and internal quotation marks omitted).

In this case, the Plaintiff makes no specific allegation that the individual defendants possessed final decision-making authority under the Village of Rockville Centre Code. Accordingly, the complaint as against the Village of Rockville Centre is dismissed. However, because the Plaintiff may be able to make further assertions as to municipal liability, the Plaintiff is given leave to replead the Monell claims.

Next, the Court addresses the claims against the individual officers in their official capacity (the "official-capacity claims"). The Court dismisses the official-capacity claims against the individual officers because they are duplicative of the Monell claims against the Village. See e.g., Orange v. Cnty. of Suffolk, 830 F. Supp. 701, 707 (E.D.N.Y. 1993) ("[I]t would be redundant to allow the [Section 1983] suit to proceed against both Suffolk County and the individuals in their official capacity."); see also Ky. v. Graham, 473 U.S. 159, 165–66 & 167 n. 14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (Marshall, J.) (holding that "[o]fficial-capacity suits, in contrast [with personal-capacity suits], 'generally represent only another way of pleading an action against an entity of which an officer is an agent' " and that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under Monell, supra, local government units can be sued directly") (quoting Monell, 436 U.S. at 690 n. 55).

To be sure, "[t]he fact that [the Plaintiff] has pleaded the Monell claim premised on a policy -- which is, as discussed above, functionally the same as the official-capacity claim – does not otherwise preclude him from pleading the claim against the individual officers in their personal capacities." Dudek v. Nassau Cnty. Sheriff's Dep't, 12-CV-1193 PKC, 2013 WL 6092855, at *7 (E.D.N.Y. Nov. 19, 2013); see Hafer v. Melo, 502 U.S. 21, 27, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (O'Connor, J.) (rejecting the argument

that "state officials may not be held liable in their personal capacity for actions they take in their official capacity").

G. The Personal Capacity Claims

As for the personal capacity claims seeking monetary relief, the Defendants argue that these claims should be dismissed because the Individual Defendants were not "personally involved" in the demolition of Powell's home and thereby violated her right of procedural due process.

Indeed, an individual officer's personal involvement in the "constitutional deprivation[ ]" is a "prerequisite" to a Section 1983 claim against them. McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1997). Here, the Court finds that, except as to Bushing, the amended complaint contains sufficient allegations to state Section 1983 causes of action under the Fourteenth Amendment.

As noted above, Casella allegedly, among other things, ordered the premises boarded up and issued a notice of violation with an opportunity to cure to Powell. Levine allegedly advised the Plaintiff about the imminent demolition. Burke allegedly ordered Powell's removal from the premises. Finally, Quigley allegedly authored a letter to Powell about the need for remediation on the premises.

On the other hand, the Plaintiff makes no particularized allegation as to Bushing, aside from naming him as an individual defendant. However, because the Plaintiff may be able to make further assertions as to Bushing's personal involvement in the underlying events, the Plaintiff is given leave to replead his Fourteenth Amendment claim under Section 1983 against Bushing in his individual capacity.

H. State Constitutional Claims

      The Plaintiff broadly asserts violations of Powell's rights under the New York State Constitution (the "state constitutional claims").  "These claims are based upon the same factual allegations as set forth with regard to the[] Section 1983 claims.  [The] Plaintiff[] do[es] not identify how their state constitutional claims differ from their Section 1983 claims, or support the conclusion that the various Articles of the New York State Constitution cited in the Amended Complaint allow for a private right of action." Krug v. Cnty. of Rennselaer, 559 F. Supp. 2d 223, 247-48 (N.D.N.Y. 2008).  "[V]arious federal courts in this circuit have held that 'there is no private right of action under the New York State Constitution where . . . remedies are available under § 1983.'" Clayton v. City of Poughkeepsie, 2007 WL 2154196, at *7 (June 21, 2007) (quoting DeVito v. Barrant, No. 03–CV–1927(DLI)(RLM), 2005 U.S. Dist. LEXIS 22444, *24, 2005 WL 2033722 (E.D.N.Y. Aug. 23, 2005) in turn citing Flores v. City of Mount Vernon, 41 F. Supp. 2d 439, 446–47 (S.D.N.Y. 1999)).  Because all state constitutional law claims are also asserted as Section 1983 claims, all such claims are dismissed. Id.

I.  Emotional Distress Claim

      To the extent the Plaintiff raises a state common law claim of intentional or negligent infliction of emotional distress, that claim fails as a matter of law because the Plaintiff failed to plead compliance with New York State's notice of claim requirement.

      As an initial matter, the Court observes that the Plaintiff failed to attach the notices of claim to the complaint and amended complaint.  However, the Defendants attached both notices of claim to their memorandum of law in order to establish that Plaintiff failed to raise a claim for intentional or negligent infliction of emotion distress in

either notice of claim. The Court considers these documents in the context of the present motion to dismiss because the "Plaintiff['s] failure to include matters of which [he] had notice and which were integral to [his] claim – and that they apparently most wanted to avoid – may not serve as a means of forestalling the district court's decision on [a 12(b)(6)] motion." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011), quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 44 (2d Cir. 1991)(quotation marks omitted).

With respect to the emotional distress claim, state claims brought under state law in federal court are subject to the state procedural rules. See e.g., Felder v. Casey, 487 U.S. 131, 141, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988). Section 50–e of the New York General Municipal Law requires that a notice of claim be filed within ninety days of the incident giving rise to the claim. Moreover, pursuant to Section 50–i, a plaintiff must plead in the complaint that: (1) the notice of claim was served; (2) at least thirty days has elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim. See Horvath v. Daniel, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006). The plaintiffs bear the burden of demonstrating compliance with the notice of claim requirement. Id.; see Rattner v. Planning Comm'n of Vill. of Pleasantville, 156 A.D.2d 521, 548 N.Y.S.2d 943 (N.Y. App. Div. 1989).

In this case, the notice of claim and the amended notice of claim are devoid of any reference to emotional distress, whether intentionally or negligently inflicted. Accordingly, inasmuch as the Plaintiff raises state common law claims for intentional or negligent infliction of emotional distress, those claims are procedurally barred.

J. <u>Punitive Damages</u>

Finally, the Defendants assert that punitive damages are barred as a matter of law. However, "[p]unitive damages may be awarded in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" <u>Frank Sloup & Crabs Unlimited, LLC v. Loeffler</u>, 745 F. Supp. 2d 115, 147 (E.D.N.Y. 2010), quoting <u>Smith v. Wade</u>, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). Accordingly, the Court declines to dismiss punitive damages as a requested form of relief as to the remaining parties.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendants' motion to dismiss is granted in part as to the (1) Plaintiff's taking clause claims, (2) the Fourth Amendment claims under 42 U.S.C. § 1983; (3) the <u>Monell</u> claims against the Incorporated Village of Rockville Centre; (4) the official-capacity claims; (5) the Fourteenth Amendment claim under 42 U.S.C. § 1983 as to Bushing in his individual capacity; (6) the New York State constitutional claims; and (7) intentional and negligent infliction of emotional distress claims; and it is further

**ORDERED**, that the Plaintiff is given thirty days from the date of this order to replead the <u>Monell</u> claims against the Village of Rockville Centre, and the Fourteenth amendment claims against Bushing in his individual capacity. Failure to file a second amended complaint containing further factual contentions as to

these causes of action within the allotted time period will result in their dismissal with prejudice; and it is further

**ORDERED,** that the Defendants' motion to dismiss is denied in part as to (1) the Plaintiff's the Fourteenth Amendment claims under 42 U.S.C. § 1983 as to Casella, Levine, Burke, and Quigley in their individual capacities and (2) the extent the Defendants seek to strike the Plaintiff's prayer for punitive damages; and it is further

**ORDERED**, that the Court makes no findings of law as to the defense of qualified immunity at this stage of the litigation; and it is further

**ORDERED**, that, to the extent the Plaintiff seeks additional discovery, his counsel should file a formal request with Judge Tomlinson.

**SO ORDERED**.
Dated: Central Islip, New York
December 5, 2013

        *Arthur D. Spatt*
        Arthur D. Spatt
        United States District Judge